

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

January 18, 2024

**Via ECF**
The Honorable Judge Anne Y. Shields, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: **Manzanares v. JFK Roger's Construction, Inc., et al.**
     **23-CV-2350 (AYS)**

Dear Judge Shields:

Our office represents Nixon Josue Flores Manzanares ("Plaintiff") and we submit this motion jointly with counsel for JFK Roger's Construction Inc. and Roger Jimenez (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached at a Court-annexed mediation with all parties present on November 30, 2023.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

### I.      The Monetary Terms of the Settlement Agreement are Fair and Reasonable

#### a. The Settlement Amount

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $25,000.00.

#### b. Plaintiff's Position

Plaintiff commenced this lawsuit alleging, *inter alia*, that he was not paid proper overtime rates of pay in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff alleged that he was employed at Defendants' place of business located in Freeport, NY 11520, from in or around February 2022 until in or around February 2023 as a framer and laborer.

During his employment, Plaintiff alleged that he regularly worked six (6) days per week and approximately nine (9) hours per day, 5 days per week and eight (8) hours per day, once a week, for a total of approximately fifty-three (53) hours per week. However, Plaintiff alleged that he was compensated at a regular rate of $150.00 per day for all hours worked, even those hours in excess of forty (40) per week.

In total, Plaintiff alleged approximately $20,475.00 in unpaid overtime compensation, not including any additional monetary relief to which Plaintiff may have been entitled under the applicable federal and state laws.

In advance of the mediation, Defendants produced some time and pay records which indicated a shorter period of employment alleged by Plaintiff as well as fewer hours worked by Plaintiff. Plaintiff maintained disputes as to the accuracy of such records. As such, there were *bona fide* factual disputes over the dates of Plaintiff's employment and as to the number of hours and days that Plaintiff worked each week.

Although Plaintiff was confident that he could prevail on all of his claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of his alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a much later date in the future. Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to his wage claims.

### c. Defendants' Position

JFK is a small contracting company that builds and renovates residential houses. It employs a crew of workers on each project. Plaintiff was a crew member between February 2022 to early February 2023 when Plaintiff was injured. The JFK workers had a regimented schedule employed for each workday from Monday through Friday: work begins at 8 a.m., the workers received a one-hour, uninterrupted, unpaid lunch break, and work ended promptly at 5 p.m. For any Saturday, the start time was 9 a.m. Plaintiff and the other crew members worked an 8-hour day on weekdays and a 7-hour day when they worked on Saturday. Because the projects required the work crew to be outdoors, work was canceled when it rained, snowed or was too cold. Also, when there was no ongoing project or for other miscellaneous reasons, the crew, including Plaintiff, did not work.

From the workweek starting on September 5, 2022, through March 2023, JFK maintained precise records of the days on which Plaintiff and the rest of the crew worked. The records also reflect the hours worked and weekly pay received. However, when JFK had to end a workday early because of rain, snow or some other reason, it credited the crew, including Plaintiff, for a full workday.

JFK's records from workweek September 5, 2022, through March 2023 show that at no time did Plaintiff, or any other crew member, work six days or more than 40 hours in a week. The records reflect a weekly calendar in which an "x" denotes a day worked, and a "-"denotes a day *not* worked. The most Plaintiff ever worked was five days of eight hours, *i.e.*, a 40-hour week—no overtime. There were many weeks where Plaintiff did not even work five days and accordingly worked less than 40 hours. The records also reflect the hours worked per day—the regimented 8 a.m. to 5 p.m. schedule with the one-hour lunch break—and the pay received; for Plaintiff $160 per day. Plaintiff and the other crew members signed off on the days and hours worked each week, and the pay received, by placing their signature on the time and pay sheets.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $25,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 6 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.     Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a.  Distribution to Plaintiff

The parties agreed to a global settlement of $25,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $15,996.67 after the requested attorneys' fees and expenses.

#### b.  Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,005.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $303.00
- the costs of Court-annexed mediation: $300.00.

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($23,995.00), or $7,998.33 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $9,003.33.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $25,000.00
**Attorneys' Expenses:** $1,005.00
**Net Settlement Amount:** $23,995.00 ($25,000.00 - $1,005.00)
**Requested Attorneys' Fees:** $7,998.33 ($23,995.00 / 3)
**Total payable to Attorneys:** $9,003.33 ($7,998.33 + $1,005.00)
**Total payable to Plaintiff:** $15,996.67 ($25,000.00 - $9,003.33)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this

Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

  This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV. <u>Closing</u>

  In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

        Respectfully submitted,

        *James O'Donnell*
        James O'Donnell, Esq.